## Richmond.

## JEFFRIES AND COMPANY, INC., *v.* KRAMER BROTHERS COMPANY, INC.

### March 15, 1923.

SALES—*Action for Breach by Seller—Claim of Set-Off by Buyer—Case at Bar.*—
In the instant case, an action by seller of lumber to recover balance
of purchase money from the buyer, defendant claimed as a set-off
damages for failure of plaintiff to furnish two lots of the lumber con-
tracted for. It appeared that after many attempts by plaintiff to
obtain a settlement from defendant for the lumber delivered, a new
contract was entered into between the parties, by which it was
agreed that if defendant would settle the old account plaintiff would
deliver the two lots in question. Defendant failed to pay the old
account.

    *Held:* That there was no evidence to support defendant's plea of set-
off, as by failing to pay the old account defendant and not plaintiff
was in default in the performance of the new contract.

Error to a judgment of the Circuit Court of the city
of Norfolk, in an action of assumpsit. Judgment for
plaintiff. Defendant assigns error.

                                     *Affirmed.*

The opinion states the case.

*Ernest S. Merrill* and *Tazewell Taylor*, for the plain-
tiff in error.

*E. A. Bilisoly* and *W. A. Worth*, for the defendant in
error.

BURKS, J., delivered the opinion of the court.

This was an action of assumpsit on an open account
for $307.22, by Kramer Bros. Co. against Jeffries & Co.

The plaintiff's claim was not disputed, but the defendant claimed set-offs to the amount of $705.07. The jury found for the defendant on the set-offs, and the plaintiff moved to set aside the verdict and for judgment in its favor for the $307.22, in accordance with section 6251 of the Code. This motion was sustained and judgment so entered. To that judgment a writ of error was awarded by this court.

Kramer Bros. Co., a corporation, was engaged in the lumber business in North Carolina, and in the year 1917, Jeffries & Co., Inc., ordered of the former sundry bills of lumber which Kramer Bros. Co. accepted and agreed to fill. All of these orders were filled but two, and there was due to the plaintiff (Kramer Bros. Co.) by the defendant $307.22, about which there was no controversy. The two unfilled orders were designated as S-207, which was placed June 17, 1917, and R-301, which was placed July 27, 1917. It was claimed by the defendant that in consequence of the failure of the plaintiff to fill these orders, the defendant was compelled to go upon the market and purchase the lumber needed to supply its place at a loss of $705.07, on the contract price. The contract and dealings of the parties were largely by correspondence. The lumber was sold f. o. b. point of destination, which was Norfolk, Hampton, or Newport News, Va., and the terms of payment were "two per cent. in ten days after date of shipment, thirty days net." In fixing these terms, the seller said, in its letter of February 17, 1917, fixing the terms, "We have adopted this plan as we do not care to have an account open on our books longer than thirty days."

As early as August 10, 1917, the defendant began inquiring about when the two orders in controversy would be filled and urging the shipments as soon as possible, and these inquiries and requests for shipment continued

from time to time during the fall of 1917. No time was fixed in the orders for the delivery of the lumber. The plaintiff from time to time wrote that it had been unable to fill the orders because continued rains had rendered it impossible to haul the lumber from their country mill, and because of freight embargoes and other causes beyond the control of the plaintiff. On the other hand, as early as September 27, 1917, the plaintiff began to complain that the defendant was not living up to its contract in the matter of settlements for lumber shipped, stating at that time, "We are enclosing statement showing a balance due us of $559.05 on completed jobs; all of this being overdue." These complaints continued more or less frequently during the fall of 1917. Finally the plaintiff employed an attorney to go to Norfolk and get a settlement with defendant for what was due for the lumber already shipped. The evidence on the subject of these negotiations consists of the testimony of Mr. Worth, the attorney representing the plaintiff, and of Mr. R. S. Jeffries representing the defendant. Mr. Worth testified in part as follows:

"In January, 1918, I was employed by Kramer Brothers Company to undertake the completion of this claim against Mr. Jeffries. * * * After receiving the account I came to Norfolk to see Mr. Jeffries some time perhaps early in February or the latter part of January of 1918. I went to see Mr. Jeffries and he told me that there was something on that bill that had not been furnished and they were entitled to a credit as they had to buy it on the open market. Knowing nothing about it, I went home, got in touch with my clients and found out that that item had already been allowed him in a credit on November, 1917, two or three months previous, which brought the bill down to $583.22, so I either went or wrote him here at Norfolk. I usually

came down here, and asked him about it again. He promised then to send me a check. He made repeated promises to send it. Frequently he would say, 'I will send it to you on such and such a day,' and he had to go to Newport News and this, that and the other, and after I had written a number of letters and had been to see him a number of times, I told him something would have to be done about it. He said, 'Well, we have placed two more orders with Mr. Kramer and we would like to have those goods shipped.' I said 'Mr. Jeffries, they are not going to ship you any more goods until you pay your old account.' He said, 'I would like to have them and I will agree to pay my old account provided they will ship me those other goods sight draft ten days bill of lading attached, and if they will give me a letter to that effect I will send you a check right away.' I went home and got Messrs. Kramer Brothers and Company to write me a letter which is dated February 23rd, exactly in accordance with Mr. Jeffries' promises, and sent it to him. I didn't hear a thing. Some time after that I got a check from him, a post dated check for $200.00. I immediately wrote him back and called his attention to the agreement. The agreement, as you know, stated that they would ship just as soon as the railroads would take it and I couldn't get any reply from him at all except promises. I would come down here and go to his office and he would always put me off with, 'I will send you a check tomorrow,' or 'I will send it to you Saturday,' or 'It will be there certainly Monday,' until I became discouraged and never at any time did he say anything about these two orders except that time in February when he said he wanted them and then I got my clients to write him a letter that they would ship those orders at the old prices because, of course, there was nothing said in there except that they

would fill the orders and ship them if he would pay his account, and he never would pay it, and never has paid it, and the only time he has ever said anything about suffering by reason of not getting it was when that letter was written that this suit would be instituted * * *."

The letter of February 23, 1918, above referred to, is as follows:

"February 23, 1918.

"Messrs. Jeffries & Company,
    "Norfolk, Va.
"Dear Sirs:

"Mr. W. A. Worth asked us to write you a letter in regard to shipping you the other two orders that we have had for you for some time.

"We are willing to ship these jobs to you, provided you settle your account with us at once. We will ship them bill lading attached, two per cent. discount in ten days.

"We will ship these jobs as soon as the railroad company will receive shipments for Hampton.

"Of course, we have nothing to do with the embargo trouble and would not be responsible for the shipments getting to you at a certain date for this reason.

                "Yours very truly,
                    "Kramer Bros. Company,
                        (Signed) J. H. Kramer, Secretary."

On the same subject Mr. Jeffries testified in part as follows:

"When Mr. Worth came to my office, I think it was possibly in January, 1918, I told him about the delays

that we had had. I told him we were holding back these payments, that in the meantime not only lumber had gone up, labor had gone up, and plumbing had gone up, and there was no telling how much we would lose by having waited for that lumber. I then suggested to him that we had this $307.00 that was due him. We had it on our books and knew that it was due him, and if we had the assurance that we could get that lumber we had ordered and for which we had a contract to finish these houses, that we were perfectly willing to settle. I didn't tell him I was willing to send it on the statement that we had. What I wanted was either the shipment of the lumber or some guarantee that it would be shipped and shipped within a reasonable time. I wrote this and told him we were perfectly willing to settle. I told him if it was a question of his getting it, that it was our suggestion that we would accept the lumber on a basis of ten days draft with bill of lading attached subject to the two per cent. which they would allow for ten days. We were holding back on all of these payments entirely. He refers to our promises of payment. They were absolutely no more than Mr. Kramer had promised to ship and our promises were all based on Mr. Kramer's promise to keep up his end of the agreement. We didn't propose to pay him for half a bill and tie that much money up in the house, our lumber and our capital wasn't sufficient to tie it up that way and we didn't feel we were called on to do it. The thing went on then. He went back and wrote me that letter in which he said he would ship that upon the payment of the account of $307.00 which is this account, but gave us absolutely no satisfaction as to when, simply when he could."

In speaking of the promises of Kramer to furnish the bills of lumber, he testified:

"He promised during the first part of the contract,

during the summer and fall of 1917 and said it was on account of rains. He said it was on account of the bad roads. He said it was on account of labor and on account of everything, and in February of 1918 was when this original agreement was made, and, as I said, he was demanding a payment of us there on something, a part of which we had not received, although it had been shipped several months before and the thing just dragged on and dragged on in that way until it came to a climax when they sent us that letter in which they agreed to fulfil it but fulfil it at new prices."

It will be observed from the foregoing evidence that the parties made a new contract in February, 1918, or in the language of the witness, Jeffries, "In February, 1918, was when this original contract was made." Our inquiry, therefore, is directed to the performance or breach of that contract. Jeffries admits that at that time "we had this $307 that was due him," and "if we had the assurance that we could get that lumber we had ordered and for which we had a contract to finish these houses, that we were perfectly willing to settle. I didn't tell him I was willing to send it on the statement that we had. What I wanted was either the shipment of the lumber or some guarantee that it would be shipped and shipped within a reasonable time." This guaranty, or the only one that anyone could give as to shipments while the railroads were under Federal control, was given by Kramer in the letter of February 23, 1918, which was received by Jeffries. Kramer Bros. Co., in this letter, gave to the Jeffries Company the assurance which Worth describes as "exactly in accordance with Mr. Jeffries' promises," and of the sufficiency of which Jeffries then made no complaint. The Jeffries Company still continued in default in settling the balance due the plaintiff. On March 4, 1918, Jeffries

wrote Worth that he had been at home sick, but would write him in a few days. On March 19, 1918, Worth wrote Jeffries that he had drawn a draft on him which he requested him to protect. On March 23, 1918, Jeffries wrote Worth saying that the draft had come while he was out of the city, and saying he enclosed a check for $200 "dated next Saturday, March 30th (one week from today), which you will please apply on account. I am making this payable on the 30th for the reason that I am leaving the city Monday to be gone the balance of the week; so you will please hold it and use on that date. When I return, will get the balance fixed up."

On March 26, 1918, Worth replied as follows: "Please accept my thanks for yours of the 23rd enclosing post-dated check for $200.00 on account to be applied on account of Kramer Bros. Co. I sincerely hope you will let me have check for the balance of this not later than the first of next week as my people are getting very impatient."

We find no further correspondence on the subject until September 30, 1918, when Worth wrote the Jeffries company as follows: "Referring to the account of Kramer Bros. Co. which you promised me that you would settle some months ago, I beg to say that my clients will not wait any longer and I am requesting the Norfolk attorneys, who are to assist me, to institute suit the last of this week. I must say that I think it is due me that this account be paid without litigation as I have done everything I could consistently to favor you and withheld suit on the unconditional promise of your Mr. Jeffries that he would send me check. If you see fit to let me have check this week, I will appreciate it."

The correspondence after September 30, 1918, deals with the demand made by the Jeffries company of the

plaintiff for a written agreement to fill the two orders in controversy at the prices named in those orders in June and July, 1917, and the refusal of compliance on the part of the plaintiff, and with the steps taken in consequence of that refusal. We do not regard these matters as material, as the contract of February 23, 1918, had already been broken by the defendant's failure to make the settlement called for, and the plaintiff was standing upon its legal rights. If the defendant had made the settlement stipulated for, and the plaintiff had then failed to fill the two orders at the original price a different question would have been presented, but it did not do so.

During all this time from February 23, 1918, to September 30, 1918—seven and a half months—no complaint was made of the sufficiency of the letter of February 13, 1918, and yet the Jeffries Company did not settle the admitted balance due the plaintiff. When the price of lumber was rapidly advancing, it was not to be expected that the promise in the letter of February 23, 1918, to furnish lumber at the original contract price would continue indefinitely while the Jeffries Company continued in default in the payment of the admitted balance due the plaintiff. We are of opinion that the Jeffries Company were in default in the fulfilment of the contract of February 23, 1918, and that the Kramer Bros. Company were in no default in the performance of their part of said contract, and hence there was no evidence to support that part of the verdict of the jury finding for the defendant on its plea of set-off, and that the trial court committed no error in setting aside said verdict and entering judgment for the plaintiff for $307.22.

*Affirmed.*